570 So.2d 528 (1990)
JEFFERSON PARISH SCHOOL BOARD
v.
RITTINER ENGINEERING COMPANY, INC. a/k/a General Oil Field Supply, Inc. and United States Fidelity & Guaranty Company.
No. 90-CA-313.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
*529 Jerry A. Beatmann, Lloyd N. Shields, Paul J. McMahon, Simon, Perangine, Smith & Redfearn, New Orleans, for USF & G, defendants/third-party plaintiffs-appellants.
Eugene R. Preaus, David J. Krebs, Maura Z. Pelleteri, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for Travelers Indem. Co., third-party defendant-appellee.
Before CHEHARDY, GAUDIN, and GOTHARD, JJ.
GOTHARD, Judge.
This case arises from a public construction contract. The surety for the general contractor appeals dismissal of his third party demand against the subcontractor's surety on an exception of no right of action.
The Jefferson Parish School Board entered into a building contract with Rittiner Engineering Company, Inc. to construct the Woodmere Elementary School. Rittiner subcontracted construction of the sewer lines to Walter J. Comer, Inc. The contracts were executed in March, 1985 and the work was accepted as substantially complete on August 17, 1987. Early in 1988 sewer lines broke beneath the building, allegedly from faulty installation of hangers supporting the lines. On November 9, 1988 the school board sued Rittiner and USF & G, which had issued a performance bond to Rittiner in favor of the school board.
Rittiner filed a third party complaint against the subcontractor, Comer, Inc., and Travelers Indemnity Company, which had issued a performance bond in favor of Rittiner, and Comer's liability insurers. USF & G also filed third party demands against Comer, Inc. and Travelers, alleging that Comer's defective workmanship or negligence caused the ruptured sewer lines. Comer, Inc. has filed for bankruptcy and all proceedings against it have been stayed. Travelers' exception of no right of action to USF & G's third party claim was sustained on February 22, 1990, without oral or written reasons. This appeal followed.
The only issue before us is whether the surety of a general contractor has a third party right of action against the surety of a subcontractor, whose defective workmanship or negligence allegedly caused the damages for which the general contractor's surety may be held liable.
USF & G's position is that it has a right of action against Travelers, the surety of the bankrupt subcontractor, under legal subrogation. The appellant maintains that if Rittiner is cast for damages and it must pay as surety, then it may seek recovery, as Rittiner's subrogee, from the surety of the subcontractor whose negligence caused the sewer lines to fail. LSA-C.C. art. 1829(3) states:

*530 Subrogation takes place by operation of law:
. . . . .
(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of payment; ...
USF & G relies upon Aetna Ins. Co. v. Naquin, 488 So.2d 950 (La.1986), in which the Supreme Court upheld the finding of this court[1] that the insurance company, having paid to its insured, was legally subrogated to the rights of its insured against a roofer who caused damage to the insured's apartment building and the tenants' property. It mattered not that the insurer paid the tenants directly or that the insurer and insured were not solidarily liable; Civil Code article 2161[2] required only that the payor was "bound with others or for others for the payment of the debt." The appellant asserts that Comer and Travelers are co-debtors with Rittiner and USF & G for the debt to the school board.
Travelers asserts that, unlike the insurer and roofer in Aetna Ins. Co. v. Naquin, supra, Comer and Travelers are not co-debtors with Rittiner and USF & G, and the requirements of LSA-C.C. art. 1829(3) are not met. Travelers reasons that USF & G and Rittiner are debtors to the school board, while Comer and Travelers are bound only to Rittiner. Thus, if USF & G pays, it is subrogated only to the school board's rights against Rittiner. LSA-C.C. art. 3048.[3]
USF & G argues that its position is identical to that of the third party plaintiff in Dietrich v. Travelers Ins. Co., 509 So.2d 49 (La.App. 1st Cir.1987). In that case the plaintiff was seriously injured in a swimming pool at the residence of a Mrs. Clark. In separate suits Ms. Dietrich sued the homeowner and her insurer for negligence and her employer and its medical insurer for failure to provide medical benefits, as promised in her employment contract, when the insurer denied her claim. The employer filed a third party complaint against the owner and her homeowner's insurer. The appellate court followed Aetna Ins. Co. v. Naquin, in finding that if Mrs. Dietrich prevailed the employer would have paid a debt for which it was legally bound with another, i.e. the medical insurer, and would be legally subrogated to the plaintiff's claim against the homeowner and her insurer for negligence.
Regardless of whether or not USF & G's situation was comparable to that of Dietrich's third party claimant, our reading of Aetna Ins. Co. v. Naquin is opposed to the holding of Dietrich insofar as it permitted a third party claim by an obligor who had not paid.
The narrow holding of Aetna Ins. Co. v. Naquin reads, at 954, "... Therefore we hold that Aetna, having paid a debt [for] which they were bound with Naquin, is entitled to be legally subrogated to their insureds' breach of contract action against Naquin...." [Emphasis supplied.] The opinion discusses in detail an article by Professor H. Alston Johnson, "Legal Subrogation of Insurer to Insured's Rights Upon Payment of Claim," 39 La.L.Rev. 675 (1979). Professor Johnson's thesis was that legal subrogation should be the rule when the insurer has paid under its policy, and the court agreed with Johnson's policy reasons for the rule. Professor Johnson commented approvingly on Aetna Ins. Co. v. Naquin in Developments in the Law, 1985-1986Part II, 47 La.L.Rev. 511, 517, (1987) and did not expand the ruling to situations in which the debt had not yet been paid, as is true in the case before us. See also Comment, 61 Tul.L.Rev. 689, (1987); Hellmers v. Dept. of Transp. & Development, 503 So.2d 174, 180 (La.App. 4th Cir.1987); Fireman's Fund Ins. Co. of California v. Lee, 501 So.2d 877 (La.App. *531 5th Cir.1987). Accordingly, we find that the trial court correctly dismissed the appellant's third party claim on an exception of no right of action.
In its reply brief, USF & G argues that it is conventionally subrogated to the rights of Rittiner by virtue of a "Master Surety Agreement," signed on April 1, 1982, applicable to all bonds in force or to be executed by USF & G in behalf of Rittiner.
In accordance with Uniform Rules Courts of Appeal, Rule 2-12, sections 4, 5, and 6, the court will not consider this argument, as the appellant failed to present the issue of conventional subrogation in its original brief. Under Rule 2-12.6 the appellant may file a reply brief "but it shall be strictly confined to rebuttal of points urged in the appellee's brief...."
For the reasons assigned above the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] 478 So.2d 1352 (La.App. 5th Cir.1985). See also Fireman's Fund Ins. Co. of California v. Lee, 501 So.2d 877 (La.App. 5th Cir.1987).
[2] The facts of Aetna Ins. Co. v. Naquin took place prior to the repeal of article 2161, replaced by Article 1829, which retains the substance of the old article.
[3] Article 3048 provides: "The surety who pays the principal obligation is subrogated by operation of law to the rights of the creditor."